USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/24/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
JDM IMPORT CO. INC., MG WORLDWIDE :
LLC, and ASIA PACIFIC JEWELRY, L.L.C., :
  :
  :
                              Plaintiffs,  :            22-CV-4042 (VEC)
             -against-        :
  :                                                     OPINION AND ORDER
  :
SHREE RAMKRISHNA EXPORTS PVT., :
LTD., AMIT SHAH, and THE JEWELRY :
CO., :
  :
  :
                              Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Plaintiffs JDM Import Co., Inc. ("JDM"), MG Worldwide LLC ("MGW"), and Asia Pacific Jewelry, L.L.C. ("Asia Pacific") (collectively, "Plaintiffs"), have sued Defendants Shree Ramkrishna Exports Pvt., Ltd. ("SRK"), Amit Shah, and The Jewelry Co. (collectively, "Defendants") for: (1) tortious interference with business relations; and (2) unfair competition. First Am. Compl. ("FAC") (Dkt. 16). Defendants have moved to dismiss Plaintiffs' amended complaint for lack of personal jurisdiction over all Defendants pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. (Dkt. 23). Plaintiffs oppose the motion. Pls. Opp. (Dkt. 32). For the reasons discussed below, Defendants' motion to dismiss is GRANTED, and the Amended Complaint is DISMISSED with prejudice.

# BACKGROUND[1]

## I. Facts

This is the second action commenced by Plaintiffs against Defendants in this Court. *See JDM Imp. Co. Inc. v. Shree Ramkrishna Exports Pvt., Ltd.*, 2021 WL 5450237 (S.D.N.Y. Nov. 19, 2021) ("*JDM I*").[2] Plaintiffs are a New York jewelry wholesaler that sells to major retailers in New York and elsewhere in the United States. FAC ¶ 32. Their clients include Signet Jewelers, the retailer that owns the "Zales" brand of jewelry. *Id.* ¶¶ 33–35. Defendants SRK and The Jewelry Co. are foreign entities organized under the law of India and are based in India. *Id.* ¶¶ 8–9. Defendant Amit Shah is the Chief Executive Officer of The Jewelry Co. and resides in, and is a citizen of, India. *Id.* ¶ 7. Non-party TJC Jewelry, Inc. ("TJC") is a corporation with its principal place of business in New York. *Id.* ¶ 12. Non-party Ashish Shah is the Chief Executive Officer of TJC. *Id.* ¶ 13. Plaintiffs allege that TJC "is controlled by, is a marketing affiliate of, and serves as SRK's and The Jewelry Co.'s agent and instrumentality in the United States." *Id.* ¶ 12.[3]

---

[1] The well-pled facts in the Amended Complaint are assumed true for purposes of evaluating Defendants' motion to dismiss. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

[2] In addition to the previous action in this Court, Plaintiffs have commenced three other actions involving the Defendants. Those actions were summarized as follows in *JDM I*: "J.G. Jewelry Pte. Ltd. ("JGJ") is a Singapore entity with 'management and control' in India and is the corporate embodiment of the parties' 2015–2017 joint venture. On March 27, 2018, Plaintiffs, together with JGJ and one other related entity, commenced an action against The Jewelry Co., SRK, and one other defendant in the Supreme Court of New York County under Index No. 651469/2018. In that case, the Plaintiffs allege that the Defendants used JGJ as a vehicle to steal tens of millions of dollars from the JDM Entities. On April 23, 2018, SRK filed suit against JGJ in Singapore, alleging that it failed to pay for approximately $23 million worth of diamonds and jewelry that SRK sold to JGJ. A director of JGJ brought a separate minority oppression lawsuit in Singapore against JGJ and Plaintiffs' principals, alleging, *inter alia*, accounting irregularities and self-dealing." 2021 WL 5450237, at *1 n.1 (citations omitted).

[3] Although the Court must assume as true all of the well-pled allegations in the Complaint, it notes that Defendants SRK and The Jewelry Co. deny any ownership interest in TJC and assert that no representative of either entity has served as an officer, director, or employee of TJC. Def. Mem. of Law at 10 (Dkt. 27).

Plaintiffs' instant complaint centers on the same events that gave rise to their first federal complaint against Defendants, filed in 2020. *See* Compl. (Dkt. 1) in 20-CV-8759.[4] Plaintiffs allege that, in early 2015, Plaintiffs and Defendants, as well as non-party TJC, entered into a joint venture to create a worldwide diamond jewelry business. FAC ¶ 11. For the duration of the joint venture, from 2015 through 2017, Defendants manufactured goods to Plaintiffs' specifications. *Id.* ¶ 38. Defendants possessed the models, designs/CADs, tooling, and other information required to make the exact items requested by Plaintiffs' clients, including Signet/Zales. *Id.* ¶ 39. During the existence of the joint venture, Defendants routinely sent employees to work out of JDM's New York office, conducted business out of the office, and hung a sign indicating that it was their office as well. *Id.* ¶¶ 21–22, 24–25. From mid-2015 through mid-2017, Defendant Amit Shah spent approximately one out of every six weeks at JDM's New York office. *Id.* ¶ 23.

On or about January 13, 2017, Signet/Zales notified Plaintiffs and Defendants that it would no longer purchase goods from vendors outside of the United States. *Id.* ¶ 41. In August 2017, Defendants "unilaterally purported to terminate" the joint venture with Plaintiffs; notwithstanding the termination, between August and October 2017 Plaintiffs continued to place Signet/Zales orders with Defendants. *Id.* ¶¶ 46–49.

Despite Defendants' agreement to fulfill Plaintiffs' orders, on October 27, 2017, Defendant Shah emailed several Signet/Zales employees: "I am sure you are aware that the partnership between [Plaintiffs] and [Defendants] has been dissolved and unfortunately it has not

---

[4] In the prior action, 20-CV-8759, Defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6); in response, Plaintiffs filed an amended complaint, which reasserted their tortious interference with business relations claim and added claims for unfair competition and unjust enrichment. Not. of Mot. (Dkt. 20), Am. Compl. (Dkt. 21). Defendants renewed their motion to dismiss, and this Court dismissed the action without prejudice due to lack of personal jurisdiction and found that, even if the Court had personal jurisdiction over Defendants, Plaintiffs nonetheless failed to state valid claims upon which relief could be granted. *JDM I*, 2021 WL 5450237, at *10.

ended well. I understand that a lot of your PO's and orders are held up in production which I don't think [Plaintiffs] will be able to deliver this season. I have a proposal for you to help you in this situation . . . ." *Id*. ¶ 53. Plaintiffs allege that Defendant Shah's email indicates that Defendants accepted Plaintiffs' orders without any intention of fulfilling them, causing Plaintiffs to "scramble" to locate a new manufacturer prior to the 2017 holiday season. *Id*. ¶¶ 55–61.

In the current complaint, Plaintiffs allege that on February 18, 2017, approximately one month after the parties became aware of Signet/Zales's decision not to import products into the United States, Defendant Shah proposed that Defendants, through non-party TJC, would establish a new vendor code for Signet/Zales (presumably to maintain the existing business with Signet/Zales). *Id.* ¶ 42. Although at least one member of Plaintiff MGW disagreed with the idea, in March and April 2017, Defendants established the Signet/Zales vendor code with TJC without Plaintiffs' knowledge. *See id.* ¶¶ 43–45 ("Upon information and belief, and unbeknownst to Plaintiffs at the time, Defendants' setting up of a vendor code through TJC NY was part of Defendants' scheme to misappropriate Plaintiffs' non-public and confidential knowledge, specifications, and other information required to manufacture, and deliver goods to Signet/Zales with the ultimate goal of diverting Plaintiffs' Signet/Zales to themselves, through TJC NY.").

## II. Motion to Dismiss

On August 24, 2022, Defendants moved to dismiss the Complaint, arguing that Plaintiffs' claims are time-barred; alternatively, Defendants argue that the doctrine of collateral estoppel prevents Plaintiffs from relitigating their prior claims. Def. Mem. of Law at 8 (Dkt. 27). Defendants also argue that, in the event the Court finds that Plaintiffs are neither time-barred nor collaterally estopped from bringing this case, Plaintiffs nonetheless fail to allege adequately that

4

this Court has personal jurisdiction over Defendants. *Id.* at 19.  Finally, Defendants argue that even if the Court has personal jurisdiction, Plaintiffs fail to state a claim.  *Id.* at 26.  Plaintiffs oppose the motion.  For the following reasons, Defendants' motion to dismiss is granted.

## DISCUSSION

### I.  Plaintiffs' Claims Are Time-Barred

Defendants assert, and Plaintiffs do not contest, that Plaintiffs' tortious interference and unfair competition claims are subject to a three-year statute of limitations.  C.P.L.R. § 214(4); Def. Mem. of Law at 15–16.  Because this case was filed on May 18, 2022, and Defendants' alleged tortious conduct occurred in 2017, *see* Compl. (Dkt. 7), absent application of a tolling statute, Plaintiffs' claims are time-barred.

Plaintiffs argue that their claims are not time-barred because New York's "savings statute" applies.[5]  Pls. Opp. at 12–16.  The savings statute provides, in relevant part:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

C.P.L.R. § 205(a).  The statute, which "is not to be frittered away by any narrow construction," is intended to "remedy[] what might otherwise be the harsh consequence of applying a limitations

---

[5]  Plaintiffs argue in a footnote that, even if the savings statute does not apply, the statute of limitations has not run because Defendants' alleged conduct (i.e., its business with Signet/Zales) continued after the termination of the joint venture in 2017. Pls. Opp. at 5 n.3. Even if the factual predicate for this argument had been alleged adequately in the Complaint, this Court is disinclined to consider the argument because it "has not been presented squarely or briefed in any detail." *Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F. Supp. 3d 543, 558 (S.D.N.Y. 2014) (citations omitted); *see also Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) (declining to review issues that are not sufficiently argued); *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised . . . .").

period where the defending party has had timely notice of the action." *Goldstein v. N.Y. State Urban Dev. Corp.*, 13 N.Y.3d 511, 521 (2009) (quoting *Matter of Morris Invs. v. Comm'r of Fin. of City of N.Y.*, 69 N.Y.2d 933, 935 (1987)).

Defendants argue that the savings statute does not apply to actions that, like *JDM I*, were dismissed for failure to obtain personal jurisdiction, meaning that Plaintiffs' claims remain subject to the three-year statute of limitations. Def. Mem. of Law at 17. Plaintiffs, however, argue that the savings statute's operative language — "failure to obtain personal jurisdiction over the defendant" — refers to a plaintiff's failure to properly *serve* the defendant. Pls. Opp. at 13. Plaintiffs' interpretation strains credulity. Not only is Plaintiffs' interpretation at odds with the statute's plain meaning (particularly in light of the statute's explicit requirement that "service upon the original defendant" be timely effectuated for the statute to apply), but Plaintiffs fail to point to any relevant case law that supports their interpretation.[6] To the extent that Plaintiffs do cite to case law addressing the meaning of the statute, that authority concerns interpretations of the statute prior to the New York State Legislature's 1992 amendment to the C.P.L.R., which added "failure to obtain personal jurisdiction" as a means of termination that does not trigger the savings clause. 1992 N.Y. Sess. Laws Ch. 216 (S. 7524-A, A. 10450-A); *see also* Pls. Opp. at 13–14.

By contrast, Defendants offer robust authority holding that dismissal for lack of personal jurisdiction does not trigger the savings clause. *See* Def. Mem. of Law at 17 (citing *Wang v. Palmisano*, 51 F. Supp. 3d 521, 532 (S.D.N.Y. 2014) (holding that the savings statute did not apply because Plaintiffs' prior actions "were dismissed for lack of personal jurisdiction");

---

[6] Plaintiffs' reliance on *Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 68 Misc. 3d 615 (N.Y. Sup. Ct. 2019), is misplaced. Pls. Opp. at 12–13. That case involved a prior action that had been dismissed for lack of subject matter jurisdiction, not personal jurisdiction. *Id.* at 618. That distinction is important because subject matter jurisdiction, unlike personal jurisdiction, is not an enumerated exception in C.P.L.R. § 205(a).

*Harrison v. Lutheran Med. Ctr.*, 468 F. App'x 33, 36 (2d Cir. 2012) (same); *Midwest Mem'l Grp., L.L.C. v. Int'l Fund Servs. (Ir.) Ltd.*, 2011 WL 4916407, at *6 (S.D.N.Y. Oct. 17, 2011) ("The tolling provisions are not applicable where a prior action against the same defendant has been terminated for lack of personal jurisdiction."); *Jacquez v. Campouerde*, 309 A.D.2d 903, 904 (2d Dep't 2003) (same)).

Plaintiffs argue that "nearly all of the cases cited by Defendants on [the meaning of the statute] are distinguishable as they involve prior actions that were commenced and terminated outside of New York State." Pls. Opp. at 16. That distinction does nothing to advance Plaintiffs' argument. The overwhelming case law supports Defendants' interpretation of the statute that failure to obtain personal jurisdiction — whether in New York or elsewhere — does not trigger the savings clause. *See, e.g.*, *Ezra v. Weitz & Luxenberg, P.C.*, 794 F. App'x 27, 29 (2d Cir. 2019) ("New York's savings statute expressly excludes prior actions terminated for lack of personal jurisdiction.") (footnote omitted); *Midwest Mem. Grp.*, 2011 WL 4916407, at *6 ("A number of courts have held that actions commenced outside of New York are not considered 'prior actions' for purposes of triggering § 205(a). If, contrary to these cases, the Court were to apply CPLR § 205(a), Plaintiff still would not prevail. [Defendant's] dismissal in Michigan was for want of jurisdiction. The tolling provisions are not applicable where a prior action against the same defendant has been terminated for lack of personal jurisdiction.") (citations omitted) (collecting cases).

In short, because the savings statute does not apply, Plaintiffs' claims are time-barred.[7]

---

7   Because this Court finds that C.P.L.R. § 205(a) does not apply, it need not decide whether the instant complaint was commenced "within six months following the termination [of the prior action]." C.P.L.R. § 205(a). The Court notes, however, that Plaintiffs' complaint would have been timely commenced if the savings provision applied: the prior action was terminated on November 19, 2021, *JDM I*, 2021 WL 5450237; the complaint in this case was filed on May 18, 2022. Compl. (Dkt. 7).

7

## II. Plaintiffs Are Collaterally Estopped from Litigating Whether This Court Has Personal Jurisdiction Over Defendants

Even if Plaintiffs' claims were not time-barred, the Amended Complaint would be dismissed because Plaintiffs are collaterally estopped from relitigating the issue of personal jurisdiction. Collateral estoppel, or issue preclusion, prevents "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). Collateral estoppel "applies to jurisdiction determinations, including those of personal jurisdiction, notwithstanding that a dismissal for lack of personal jurisdiction does not constitute an adjudication 'on the merits' for claim preclusion (i.e. res judicata) purposes." *Bersoum v. Aboteat*, 568 F. Supp. 3d 443, 453 (S.D.N.Y. 2021) (quoting *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 348 (E.D.N.Y. 2019)). "The collateral estoppel doctrine serves the 'dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or [her] privy and of promoting judicial economy by preventing needless litigation.'" *Davis v. O'Donnell*, 2019 WL 6790829, at *10 (S.D.N.Y. Dec. 12, 2019) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

For collateral estoppel to apply: (1) the issues in both proceedings must be identical; (2) the issue in the prior proceedings must have been actually litigated and decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issue must have been necessary to support a valid and final judgment on the merits. *Moscato v. MDM Grp., Inc.*, 2008 WL 2971674, at *3 (S.D.N.Y. July 31, 2008) (citing *Beck v.*

*Levering*, 947 F.2d 639, 642 (2d Cir. 1991)).[8]  "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues."  *Khandhar v. Elfenbein*, 943 F.2d 244, 247–48 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985)).

### A. Identical Issues

Defendants argue that the issue of personal jurisdiction in the present case is identical to the issue decided in *JDM I*.  Issues of personal jurisdiction are generally identical and thus subject to issue preclusion "[w]hen a plaintiff files two actions against the same defendant in the same district, . . . unless (1) subsequent events create a new legal situation; (2) the plaintiff alleges new material facts that could not have been previously discovered in the exercise of due diligence; or (3) the second complaint alleges a new cause of action that provides a different basis for personal jurisdiction."  *Moscato,* 2008 WL 2971674, at *3 (cleaned up).

Plaintiffs have neither alleged nor argued that events subsequent to the termination of *JDM I* have created a new legal situation, nor have they alleged a new cause of action: both complaints allege tortious interference with business relations and unjust enrichment.  *Compare* Am. Compl. in 20-CV-8759 (Dkt. 21), *with* FAC (Dkt. 16).  The only new allegations in the

---

[8]   Both federal and state law require the same four elements for collateral estoppel to apply, but New York additionally requires "that the issue that was raised previously must be decisive of the present action."  *Curry v. City of Syracuse,* 316 F.3d 324, 331 n.4 (2d Cir. 2003).  It is unsettled law whether state or federal common law is controlling when a federal court, exercising diversity jurisdiction, determines the preclusive effect of a prior judgment.  *See Indus. Risk Insurers v. Port Auth. of N.Y. & NJ*, 493 F.3d 283, 288 (2d Cir. 2007).  Here, it is inconsequential whether state or federal law controls.  Applying the more stringent state-law standard yields the same result as applying the federal common law standard because the issue of personal jurisdiction would undoubtedly be decisive in the present action.  *See Eastman Kodak Co. v Asia Opt. Co., Inc.*, 2012 WL 2148198, at *4 (S.D.N.Y. June 13, 2012), *aff'd,* 518 F. App'x 23 (2d Cir. 2013) ("It is likewise undisputed that finding a lack of personal jurisdiction over Fuji would be decisive in this action."); *Krepps v Reiner*, 588 F. Supp. 2d 471, 477 (S.D.N.Y. 2008), *aff'd,* 377 F. App'x 65 (2d Cir. 2010) (finding that plaintiff was estopped from relitigating the issue of personal jurisdiction under either the federal or New York standard).

instant complaint, which attempt to bolster TJC's New York contacts and its relationship with Defendants, pertain to Defendants' alleged efforts to exclude Plaintiffs from the Signet/Zales business relationship.  *See* Def. Mem. of Law at 18–19.  Even if the new allegations were sufficient to establish an agency relationship between TJC and Defendants,[9] and even if those facts were unavailable to Plaintiffs when they commenced the prior action, they would still not be material for purposes of personal jurisdiction.

This Court held in *JDM I* that Plaintiffs failed to plead "any specific conduct by TJC NY that relates to the claims at issue here."  *JDM I*, 2021 WL 5450237, at *3 n.4 (citations omitted).  Here, again, even assuming Plaintiffs alleged adequately an agency relationship between TJC and Defendants, most of the alleged conduct by TJC's CEO occurred during the parties' joint venture, before the allegedly tortious conduct occurred.  *Id.* at *5; *see supra*, 2–4.  The sole exception is Plaintiffs' allegation that Defendants set up a vendor code through TJC which they used to conduct business with Signet/Zales after the termination of the joint venture.  FAC ¶¶ 44–45, 52.  But that allegation does nothing to show conduct by Defendants — whether through TJC or otherwise — that relates to the unfulfilled orders that are at issue here.  *See JDM I*, 2021 WL 5450237, at *5 ("[T]he fact that Defendants shipped goods into New York to fulfill past orders does not confer jurisdiction over claims unrelated to those shipments because that business is not clearly related to Plaintiffs' current claim.").  Moreover, even if Plaintiffs had alleged that they were unaware of the vendor code issue when they filed the complaint in 2020, it

---

[9]  Specifically, Plaintiffs' new allegations include that Defendants implemented a new vendor code through TJC; that TJC sells only Defendants' products; and that Ashish Shah, TJC's CEO, met with Defendants' customers in New York, coordinated office visits for Defendants' employees, and conducted daily phone calls with Defendants.  FAC ¶¶ 14, 15–19, 44.

10

is not plausible that they could not have discovered its existence in the exercise of reasonable due diligence at that time.

In short, Plaintiffs have not alleged any new material facts that could not have been discovered at the time they filed their complaint in *JDM I*.[10]  Thus, Defendants have adequately shown that the issue of personal jurisdiction in the present case is identical to the one in *JDM I*.

### B. Personal Jurisdiction Was Actually Litigated and Decided

Defendants next argue that the issue of personal jurisdiction was actually litigated and decided in the prior action.  Def. Mem. of Law at 19 n.1.  The Court agrees.  In *JDM I*, Defendants moved to dismiss for lack of personal jurisdiction, and Plaintiffs opposed Defendants' motion.  *See* Dkts. 26, 27 in 20-CV-8759.  This Court considered the parties' briefs, found that it lacked personal jurisdiction over Defendants, and dismissed Plaintiffs' complaint without prejudice.  *JDM I*, 2021 WL 5450237, at **7, 10.

The Court lacked general jurisdiction over Defendants because SRK and The Jewelry Co. were both headquartered and incorporated in India, and their sales to New York customers were minimal relative to their worldwide business.  *Id.* at *3.  The Court lacked specific jurisdiction over any Defendant because none of New York's long-arm statutes applied.  *Id.* at *3–7.  Finally, even if a long-arm statute applied, due process would prevent this Court from exercising personal jurisdiction over these Defendants.  *Id.* at *7.

Plaintiffs' only apparent argument against the application of collateral estoppel appears to be that the "issue of personal jurisdiction was not decided on the merits."  Pls. Opp. at 16.  As

---

[10]  It is not relevant whether Plaintiffs had actual knowledge of the new allegations when they commenced the prior action, but the Court notes that Defendants have made a strong case suggesting that they did.  Defendants assert that "nearly all the new allegations regarding Defendants' purported agent, TJC, were pled by the Plaintiffs in a parallel state court action nearly four years ago."  Def. Mem. of Law at 18–19 (citing FAC ¶ 11–29; Feinstein Decl. Ex. D ¶¶ 64–69 (Dkt. 24-4).  Additionally, Defendants claim that Plaintiffs' prior complaint demonstrates that they in fact "had knowledge of . . . the setting up of a vendor code for TJC with Signet/Zales . . . as far back as February 2017."  Def. Mem. of Law at 19 (citing FAC ¶ 43).  Plaintiffs did not dispute Defendants' contention.

11

demonstrated above, they are mistaken. The issue of personal jurisdiction was actually litigated and actually decided. Accordingly, the issue of personal jurisdiction was fully decided on the merits in *JDM I*.

### C.  Remaining Elements

With respect to the third element required for collateral estoppel, Plaintiffs had a full and fair opportunity to litigate the issue of personal jurisdiction. "[T]he party opposing preclusion bears the burden of showing the absence of a full and fair opportunity to litigate the claims involving the precluded issue." *Zapata*, 414 F. Supp. 3d at 348. Here, Plaintiffs do not dispute that they had a full and fair opportunity to litigate the issue of personal jurisdiction in the prior action. Nor could they. Defendants raised the issue of lack of personal jurisdiction in their motion to dismiss the originally-filed complaint. Dkt. 20 in 20-CV-8759. Plaintiffs, with full knowledge of Defendants' arguments, then amended their complaint. *JDM I*, 2021 WL 5450237, at *1. Defendants again moved to dismiss for lack of personal jurisdiction, and Plaintiffs opposed Defendants' motion. *Id.* After careful consideration, this Court granted Defendants' Motion to Dismiss for lack of personal jurisdiction without prejudice. *Id.*, at *10. Thus, not only did Plaintiffs have a full and fair opportunity to litigate personal jurisdiction, but that issue was necessary to support a valid and final judgment. In *JDM I*, this Court granted Defendants' motion to dismiss for lack of personal jurisdiction, and Plaintiff neither moved for reconsideration nor appealed.

Accordingly, even if Plaintiffs were not time-barred from bringing the instant complaint, the doctrine of collateral estoppel would prevent them from doing so.[11]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiffs' claims against Defendants are DISMISSED with prejudice. The Clerk of Court is respectfully directed to close the open motion at docket entry 23 and to CLOSE the case.

**SO ORDERED.**

Date: March 24, 2023                          **VALERIE CAPRONI**
New York, New York                 **United States District Judge**

---

[11] As discussed *supra*, Plaintiffs wrongly contend that the current complaint can be brought pursuant to C.P.L.R. § 205(a), asserting that "[i]t would be nonsensical for a claim to be allowed by statute, but subject to collateral estoppel." Pl. Opp. at 16. Plaintiff's argument is flawed — collateral estoppel prevents relitigating issues that have already been fully decided, whereas the savings clause prevents causes of action that have not been fully litigated from being "capriciously" dismissed. *See, e.g.*, *Hakala v Deutsche Bank AG*, 343 F3d 111, 115 (2d Cir. 2003) ("The purpose of § 205(a) is to avert unintended and capricious unfairness . . . ."); *Peters v UBS AG*, 2014 WL 148631, at *5 (S.D.N.Y. Jan. 15, 2014), *aff'd*, 588 F. App'x 57 (2d Cir. 2014) ("Plaintiff cannot have it both ways: the cases are either different and the grace period does not apply or the cases are the same and collateral estoppel applies."). Put differently, New York's savings clause works to ensure litigants have "a genuine bite at the apple," while collateral estoppel ensures parties do not get two bites at the apple. *Matter of Winston v. Freshwater Wetlands Appeals Bd.*, 224 A.D.2d 160, 164 (2d Dep't 1996). In any event, it is axiomatic that a federal court cannot adjudicate a dispute on the merits absent personal jurisdiction over the party against whom any judgment or decision will be enforced. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014); *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty*, 480 U.S. 102, 108 (1987).

Because Plaintiffs' claims are time-barred, this Court need not decide Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) or failure to state a claim under Rule 12(b)(6).